MARVIN v. GOTSCHALL.

*(Circuit Court, D. Minnesota.   September 25, 1888.)*

PATENTS FOR INVENTIONS—NOVELTY—DRAFT EQUALIZER.

Patent No. 172,756, January 25, 1876, to Richard M. Marvin for a draft equalizer, used in the attachment of three horses to harvesters and other machinery, consists of an evener and two levers pivoted. the former at its center, and the latter at their ends to the tongue. The first lever is attached to the end of the evener and the single horse is attached to the end of the lever. The second lever is on the opposite side of the tongue, and its free end is fastened to that of the evener, and the two horses are attached to its end. The first-named lever is pivoted to the tongue in front of the second. A patent issued to Edwin F. Toof, December 19, 1865, was for an invention for the same purpose, consisting of a short evener pivoted at one-third its length, the one horse drawing on its long end. A lever is attached to the same side in front of the evener, and is attached to it. On the free end of the lever the single horse is attached. On the other side another lever is attached twice as long as the former, also attached to the evener, and to the end of this lever the two horses are attached. The length and place of pivoting these levers may be varied to give the one horse greater or less advantage over the others, or the first lever may be pivoted in the second for the same purpose. No use was made of Marvin's combination until he obtained his patent, and since then manufacturers have used his combination instead of that of Toof, upon which the patent expired in 1882. The patent to Marvin was issued after a careful comparison with the Toof patent. *Held,* that the Marvin patent was not void for want of novelty, and that it was not anticipated by the Toof patent.

At Law.   Action for damages for infringement of letters patent.

Action by Richard M. Marvin against Charles J. Gotschall for damages for the infringement of letters patent.

*Frackelton & Careins,* for plaintiff.

*Woods, Hahn & Kingman,* for defendant.

SHIRAS, J.   On the 25th day of January, 1876, letters patent No. 172,756 were issued to the plaintiff for an improvement in draft equalizers, which invention related to the means of attaching three horses to a harvester or other machine, in which the pivot of torsion is outside the line of draft; two horses being placed on one side of the tongue or pole and one on the other, so that the labor of drawing the machine should be equally distributed, while the side draft or torsion exercised on the tongue should be equalized. The means used to accomplish these ends consist of a lever or evener, marked C upon the drawing attached to the patent, which is pivoted at its center point on the tongue, a lever, marked F, pivoted at one end to the tongue and attached to one end of the lever, C, it being intended that the single horse shall be attached to the lever, F, and a spreader attached at one end to the tongue and

extending a sufficient distance to permit the attaching two horses to the end thereof, the spreader marked D being also .attached to the end of the lever, C. The lever, C, spreader, D, and lever, F, are attached in the same line in the order named to the tongue. That this mode of attaching horses to harvesters and like machines is useful and valuable is not questioned.

The defense is that plaintiff's patent in all essential particulars is anticipated by one issued to Edwin J. Toof, under date of December 19, 1865. In the specifications attached to this patent it is said:

"It is often desirable in the case of gang plows, harvesters, and other machines and vehicles having a heavy draft, that three horses should be arranged abreast of each other; in which case two horses must be placed upon one side of the guide or draft-pole, while one only is placed upon the other side, which arrangement, by ordinary draft attachments, renders the draft very unequal, and prevents the successful employment of horses in the manner proposed. My invention consists in a novel and simple arrangement of levers of suitable proportions, whereby the draft is so applied to a short lever or double tree, one of the arms of which is twice as long as the other, that the two horses arranged on one side of the guide or draft-pole draw upon the shorter arm of said double tree or lever, while one horse upon the opposite side of the draft-pole or guide draws upon the longer arm of said short double tree, thus keeping a uniform and equal draft upon both sides."

The specifications and drawing accompanying the same show that the arrangement proposed by Toof consisted of a lever attached to the tongue at a point distant one-third of the length of the lever from its end, thus making the lever project twice as far beyond the point of junction with the tongue on one side than upon the other. In front of this lever marked B on the drawing was attached another lever marked C, projecting on the same side with the longer arm of the lever, B, and to the free end of lever, C, the single horse was attached. On the other side of the tongue was attached a lever, D, twice the length of the lever, C, to the free end of which the two horses were attached. In the drawing the levers, C and D, are attached to the same point in the tongue. The attachments of the several levers were so made that the power exerted by the one horse would be equal to that exerted by the two horses on the lever, B, thus equalizing the draft. It is also stated in the specifications that the exact proportions specified may be varied to accommodate the arrangement to the varied powers of different horses, and also that the short lever, C, to which the single horse is attached, may be pivoted to the guide or draft-pole either before or behind the point at which the lever, D, to which the two horses are attached, is pivoted thereto; or, if it is desired to give the one horse still greater advantage over the two horses, the lever, C, may have its pivoted connection in the short arm of the lever, D.

In attaching three horses to a harvester, two matters are important in securing a practicable and useful mode of attachment. The first is that the attachment shall be such that none of the horses shall be required to walk through or over the standing grain, and the second is that the side draft between the two horses and the one shall be so equalized that the single

horse shall not be placed at a disadvantage. In accomplishing the first requirement, both Toof and the plaintiff place the single horse on the side towards the grain. In the Toof combination the evener or lever, B, is so attached to the pole that the longer arm thereof projects upon the side towards the grain, thus giving an advantage to the single horse, it being stated that this arm should be double the length of the one projecting on the side to which the two horses are attached. In the Toof combination, it is intended that when the horses are abreast and exerting through the lever, B, the same effect, that lever will stand at right angles with the tongue. In the Toof combination the arm, D, to which the horses are attached must be of sufficient length to give space for attaching the two horses, and it operates both as a spreader for the purpose of affording this space and also as a lever operating on the short end of the lever, B. In this combination, therefore, to equalize the draft the combined effect of the combined levers, D, and the short arm of B operated by two horses must be offset by the effect of the combined levers, C, and the long arm of B operated by the single horse.

In the plaintiff's combination, the evener is attached to the tongue at its center point. The spreader to which the two horses are attached does not operate as a lever, as the point of attachment of the horses and of the link or rod connected with the end of the evener are the same. The two horses operate, therefore, through the single lever, to-wit, the one-half of the evener, and the effect thereof is offset by the operation of the single horse upon the combined levers, F, and the one-half of the evener. When the horses are abreast, the evener, C, is not at right angles with the tongue, but it is so arranged that when the spreader, D, and lever, F, are at right angles with the tongue, the angles formed by the rods connecting the spreader, D, and the lever, F, with the ends of the evener are equal obtuse angles. And it is claimed that thereby an advantage is secured, in that if the horses, on the respective sides, fall out of line, the pole of the one falling behind upon the lever, C, will be more nearly at right angles, and by the increase of power thus acquired the equilibrium will be more readily restored. By reason of the pivoting the lever, F, to which the single horse is attached, to the tongue at a point in advance of the attachment of the spreader, D, an additional advantage is secured to the single horse in preventing the tongue from turning out of a straight line.

The contention on the part of the defense is that the essentials of the plaintiff's combination are clearly indicated in the specifications and drawing attached to the Toof patent, and therefore the latter anticipates the former; the rule being that, where the prior publication or description sets forth the essentials of the invention in such clear and exact terms that a person skilled in the art could, by the aid of the prior description, construct the machine or combination covered by the subsequent patent, without calling into play inventive as distinguished from mechanical skill, then the prior description or patent is held to have anticipated the subsequent patent. I am free to confess that I am greatly in doubt as to the true solution of the question at issue. It is hard to

escape the conclusion that the plaintiff's patent is merely a modification of the combination shown in the Toof patent, and if the plaintiff had not the benefit of certain presumptions in his favor the scale might incline against him. The fact, however, that he has a patent, and that it appears that the same was issued to him after a careful comparison in the patent-office of his combination with that shown in the Toof specifications, makes out a *prima facie* case in his favor, and the court is not justified in reversing the action of the patent-office unless it fairly appears that there is a lack of invention in the combination covered by the patent. In aid of this legal presumption is the fact that the Toof patent was granted in December, 1865, and it is not shown that the combination appearing in the plaintiff's patent was made use of by any one until the plaintiff devised it in 1876, nearly 12 years later. If, according to the theory of the defense, the changes from the Toof combination to that of plaintiff are merely mechanical, and such that they would readily suggest themselves to any skilled mechanic or operator, why is it that the same were not more promptly brought about? The fact of the long lapse of time after the Toof combination was made public before that of the plaintiff was discovered, tends strongly to support the claim that it required invention to produce it. The further fact that manufacturers are using the combination patented by plaintiff at the risk of suits for infringement, instead of the Toof combination, the patent on which expired in 1882, strongly points to the conclusion that they recognize a superior merit in the plaintiff's combination. Under these circumstances it must be held that the defendant has failed to sustain the defense of want of patentable novelty in plaintiff's combination, and as it is admitted that the defendant has been engaged in the sale of machines in which the plaintiff's combination is used, it follows that the plaintiff is entitled to a judgment for damages.

It appearing, however, that the number of machines sold by defendant is but small, the plaintiff does not ask judgment for more than a nominal sum, and the recovery therefore will be for one dollar and costs.